NAPOLEON J. GUAY *vs.* HOLLAND SYSTEM HULL COMPANY & others.

Suffolk.   November 21, 1922. — March 2, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Corporation,* Officers and agents. *Equity Jurisdiction,* Suit by minority stockholder. *Equity Pleading and Practice,* Counsel fees.

A suit by one of three stockholders and directors of a Massachusetts corporation, who owned one third of its capital stock, against the other two stockholders and directors, the corporation and a second corporation, which was organized before the first corporation, whose board of directors was controlled by the individual defendants and ninety-eight per cent of whose stock was owned by them, the remaining two per cent being owned by their nephew, to require the defendants. to pay to the first corporation $15,000, alleged to have been paid to them for the capital stock of the first corporation and misappropriated, was heard by a judge of the Superior Court. The judge found, upon evidence warranting the findings, in substance that the plaintiff paid to one of the defendants $5,000 for his stock, that the defendant did not pay that sum to the first corporation, but. paid it to the second corporation, that bookkeeping entries were made on the books of the second corporation charging each of the accounts of the individual defendants with $5,000, and crediting the first corporation with $15,000 on ac-count of personal property alleged to have been sold to it by the second corporation; that no vote of the stockholders or of the directors of the first cor-poration authorized the purchase of such personal property, no bill of sale was. given and the plaintiff did not know of it; that it and certain real estate was. used by the first corporation, of which the plaintiff was manager, and that a sum was paid for rent which the plaintiff believed and was justified in believing was. for both real estate and personal property; that returns made under oath to State authorities by the defendants and the plaintiff as to the organization of the first corporation stated that all the shares of that corporation were paid for in full in cash in the sum of $15,000. *Held,* that a decree directing the individual defendants and the second corporation to pay to the first corporation $15,000 and. interest was warranted.

The directors of a corporation occupy a fiduciary relation toward the corporation and are bound to protect its interests: they cannot unlawfully divert the proceeds of its capital, or other assets, but must exercise their authority with the utmost good faith.

In the suit above described, a decree directing the defendants to pay to the plain-

tiff a certain sum for his costs and expenses in prosecuting the suit which should operate "as a payment *pro tanto*" to the first corporation of the entire sum adjudged to be due to it, and that the balance of that sum be paid to the first corporation, was a proper exercise of judicial discretion and was warranted.

BILL IN EQUITY, filed in the Superior Court on February 21, 1920, and afterwards amended, by a minority stockholder in Holland System Hull Company, a Massachusetts corporation, against that corporation, Daniel E. Holland and John F. Holland, the other stockholders in that corporation and the owners of all but two per cent of the capital stock of Holland-System, Inc., a Massachusetts corporation, also a defendant, seeking to require the individual defendants and Holland-System, Inc., to pay to Holland System Hull Company the sum of $15,000, alleged to have been wrongfully appropriated by them from cash paid them at the organization of Holland System Hull Company, with interest, and to pay counsel fees and costs incurred by the plaintiff in the prosecution of this suit.

In the Superior Court, the suit was heard by *Sanderson,* J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence and findings by *Sanderson,* J., are described in the opinion. By order of *Sisk,* J., a final decree was entered adjudging that the individual defendant and Holland-System, Inc., were indebted to Holland System Hull Company in the sum of $15,000 and interest, in all, $22,698.50; directing that, of that sum, $2,508.50 should be paid by them forthwith to the plaintiff "for his costs and expenses in the prosecution of this suit for the benefit of defendant, Holland System Hull Company, and said payment shall operate as a payment *pro tanto* to defendant, Holland System Hull Company, of said sum of $22,698.50; and to pay forthwith to defendant, Holland System Hull Company, the balance of said sum of $22,698.50, to wit, $20,190."

Both the plaintiff and the defendants appealed.

*J. T. Hughes,* (*H. L. Barrett* with him,) for the plaintiff.

*H. V. Cunningham,* (*W. S. Bangs* with him,) for the defendants.

CROSBY, J. The plaintiff, a minority stockholder in the Holland System Hull Company (hereafter referred to as the Hull Company), brings this bill to compel the individual defendants and the Holland-System, Inc., to pay over to the Hull Company the sum of $15,000

and interest, and to pay counsel fees and costs incurred by the plaintiff in the prosecution of this suit. The case was heard by a judge of the Superior Court who made certain findings, and a final decree has been entered in favor of the plaintiff from which the defendants have appealed.

The Holland-System, Inc., was organized and the individual defendants, Daniel E. and John F. Holland, have been respectively its president and treasurer; they have constituted a majority of its board of directors, and have owned ninety-eight per cent of its capital stock, the remaining shares being held by their nephew. The corporation was organized for the purpose of engaging in the liquor business and in real estate.

In 1913, as the result of a conversation between the plaintiff and Daniel E. Holland, the latter wrote to the plaintiff and offered to form a corporation with a capital of $15,000 for the purpose, among other things, of carrying on the liquor business at the Grand View Hotel, at Nantasket Beach in the town of Hull; the plaintiff and the defendants Daniel E. and John F. Holland should each own one third of the capital stock, and the plaintiff should manage the business at a salary of $30 a week. This offer was accepted in a letter written by the plaintiff dated March 25, 1913. On April 14, 1913, the plaintiff went to work at the hotel. Soon afterwards he gave the defendant Daniel E. Holland a check for $5,000 in payment for fifty shares of stock, and on July 2, 1913, received a certificate therefor issued by the Hull Company, a corporation organized under the laws of Massachusetts for the general purpose of carrying on the liquor business, its charter being dated June 30, 1913. The individual defendants each subscribed for and received a certificate for fifty shares of stock which, with the fifty shares issued to the plaintiff, made a total of one hundred and fifty shares and constituted the entire outstanding capital of the company. Daniel E. Holland was president and a director; John F. Holland was treasurer and a director; and the plaintiff was the clerk and a director. There was evidence that the corporate records were prepared and kept by an accountant named Lewis, who was in the employ of the Hollands, and that when they were required to be signed by the clerk were so signed by the plaintiff, generally without reading them.

The articles of organization of the Hull Company, sworn to on June 27, 1913, recited that one hundred and fifty shares of stock of the corporation, par value $100 each, were to be issued and paid for in cash in full; and by a vote of the directors on July 2, 1913, the president and treasurer were authorized to issue the stock on receipt of the par value. No part of the $15,000 in cash was ever paid to the Hull Company; the $5,000 paid by the plaintiff to Daniel E. Holland was turned over by him to the Holland-System, Inc. The plaintiff testified that this payment was so made without his knowledge. Neither of the individual defendants ever paid any actual cash to the Hull Company for their stock. There appeared, however, a ledger account on the books of the Holland-System, Inc., which purported to show the receipt of $15,000 from the Hull Company and its application on account of the purchase price of the hotel property at Nantasket. The personal accounts of Daniel E. and John F. Holland were charged with $10,000 on the books of the Holland-System, Inc., and these two defendants and the accountant Lewis testified that said bookkeeping entries were equivalent to a cash payment of $15,000 to the Hull Company, and to a payment of the same amount from that company to the Holland-System, Inc. These entries were made upon the personal knowledge of John F. Holland, treasurer of both corporations, who testified that the result of these entries was the same as if he and his brother and the plaintiff had each paid $5,000 to the Hull Company, the $15,000 had been deposited in a bank in the name of the Holland System, Inc., and then he had drawn a check of the Hull Company for $15,000 and paid it to the Holland-System, Inc. The hotel property including the fixtures, stock and furniture, was purchased for $28,000 in accordance with an agreement between the owner, one Baxter, and Daniel E. and John F. Holland, but the title was taken in the name of the Holland-System, Inc., on July 1, 1913. The defendants contend that the personal property so purchased was turned over to the Hull Company together with the good will, furniture, and right to obtain a liquor license (called a "franchise"), and were worth at that time $15,000. No bill of sale of this property was ever executed and delivered to the Hull Company, but it was thereafter assessed as the property of the Holland-System, Inc. No corporate action was taken by

either corporation by vote or otherwise authorizing or ratifying either the purchase or sale of this personal property.

The plaintiff managed the business from April, 1913, until July 14, 1917, when he resigned. During his management the business was profitable, and the plaintiff testified that he understood that the $15,000 capital had been paid in in cash and was on deposit in the bank to the credit of the Hull Company; that he did not examine the books but trusted Daniel E. and John F. Holland and the accountant Lewis; that his first knowledge that the amount of the capital stock had been paid to the Holland-System, Inc., was in 1919, when he learned that fact from his counsel in this case. The Hull Company, during the period the plaintiff acted as manager, paid to the Holland-System, Inc., a rental of $20 a week, which, the plaintiff testified, he understood was for the use of both the real estate and personal property; he further testified, that he did not learn the defendants claimed that the personal property had been purchased by the Hull Company until long after he ceased to be employed as manager; and the trial judge so found.

If, in view of the circumstance that the two individual defendants, who controlled both corporations, and are the only parties in interest except the plaintiff, application was required to be made to the corporation to take action with reference to the matters complained of in the bill, and refusal or neglect to take such action was necessary before this suit could be maintained by a minority stockholder, it appears that such application in writing was so made by the plaintiff on May 5, 1919, and no action having thereafter been taken by the corporation, this bill was filed on February 21, 1920. *Peabody* v. *Flint*, 6 Allen, 52. *Almy* v. *Almy, Bigelow & Washburn, Inc.* 235 Mass. 227. *O'Brien* v. *O'Brien*, 238 Mass. 403, 410. The trial judge made certain findings of fact and ordered a decree to be entered for the plaintiff in accordance with such findings.

The evidence was taken by a commissioner and is before us. We have examined it carefully and are of opinion that the findings cannot be said to be without evidence to support them. Undoubtedly subscriptions to the capital stock of a corporation may be paid for in cash or in property. If any part of such property is personal, G. L. c. 156, § 10, cl. (c) provides that it shall

be described in such detail as the commissioner of corporations may require and the amount of stock to be issued therefor stated. In the articles of organization signed by the plaintiff and the individual defendants and sworn to on June 27, 1913, it is recited that the amount of capital stock to be issued was one hundred and fifty shares and was to be paid for in cash in full; the certificate of incorporation also recited that the capital stock was paid for in cash in full. The undisputed facts show that no cash whatever was paid into the treasury of the Hull Company as was required by the terms of incorporation, but that the defendant Daniel E. Holland took the plaintiff's check for $5,000, the amount of his subscription, and turned it over to the Holland-System, Inc. The individual defendants paid no cash to the Hull Company for their subscriptions to capital stock, but claim that the good will, fixtures and furniture of the hotel were worth $15,000 and were turned over to that company by the Holland-System, Inc., in place of the $15,000; but the court found that "There is no entry on the records of the stockholders or directors, of The Holland System Hull Company of a vote authorizing the purchase by the corporation of any part of the property at Hull, or authorizing the acceptance of such property in the place of the cash promised in payment for the capital stock, and there is no action on the part of those authorized to act for it, ratifying such a purchase. There is no entry on the records of the stockholders or directors of the Hull System, Inc., relating to the purchase of the Hull property and no entry on said records showing that a sale of any part of it was authorized."

While on the books of account of the Hull Company entries were made which purported to show that each of the three subscribers to the capital stock had paid into the treasury of the company $5,000, which had been used to buy the good will, furniture and fixtures of the hotel, that manifestly was not in accordance with the facts. It appears that no bill of sale or written lease was given to the Hull Company, and all taxes on the property real and personal were assessed to the Holland-System, Inc. The insurance premiums, repairs and all other bills of the Hull Company were paid by the Holland-System, Inc., and it was reimbursed therefor from the earnings of the Hull Company. All purchases of merchandise by the Hull Com-

pany were made from the Holland-System, Inc., which charged wholesale prices therefor. The trial judge found that there was no decision in regard to the rent at any meeting of the directors; that there was no agreement binding the plaintiff or the Hull Company that the rent was for real estate only, and that the plaintiff was justified in believing that it was a payment for the use of all the property, real and personal, bought of Baxter.

The evidence warrants a finding that the plaintiff, although a director who attended all meetings of the stockholders and directors until he resigned, had little knowledge of the business transactions; that he trusted the individual defendants and the accountant Lewis, and that his time was fully occupied in the management of the business. The judge also found that the plaintiff did not examine the books of account of the corporation, but trusted to the individual defendants, and to Lewis who kept the books; that the records of the meetings of stockholders and directors, which were signed by the plaintiff as clerk, were prepared by Lewis and submitted to the plaintiff for his signature. The judge also found that until he had engaged counsel in 1919 the plaintiff did not know that claim was made by the individual defendants that the capital stock of the Hull Company had been used to purchase the good will, furniture and fixtures of the hotel; that this disposition of the capital was not discussed or voted upon at any meeting of the stockholders or directors; that no decision to that effect was ever reached at any meeting of the Hull Company, and that there is no vote of the stockholders or directors of the Holland-System, Inc., authorizing such sale. The judge further found that neither the Holland-System, Inc., nor the individual defendants has turned over to the Hull Company the amount of the subscriptions for capital stock, or any equivalent therefor, and that the Holland-System, Inc., has received from the plaintiff and from each of the individual defendants the sum of $5,000, which represents the amount of their subscriptions; that this transaction was carried out as a result of a decision of the individual defendants, but not while acting as directors at a directors' meeting, which prevented the payment for the capital stock being made to the Hull Company.

The directors of a corporation occupy a fiduciary relation toward the corporation and are bound to protect its interests;

they cannot unlawfully divert the proceeds of its capital, or other assets, but must exercise their authority with the utmost good faith. *Elliott* v. *Baker,* 194 Mass. 518, 523. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159. *O'Brien* v. *O'Brien, supra. Lazenby* v. *Henderson,* 241 Mass. 177. The individual defendants being directors of the Hull Company could not lawfully take the funds of the corporation and turn them over to the Holland-System, Inc., unless in some proper way their action was authorized by the Hull Company, which does not appear. *Von Arnim* v. *American Tube Works,* 188 Mass. 515, 517. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 476. "It is settled that funds of a corporation can be lawfully used for corporate purposes only, and, if misappropriated by the directors, they and whoever with notice participates with them, are jointly and severally liable to the corporation for the loss and damage." *Corey* v. *Independent Ice Co.* 226 Mass. 391, 393. *Cole* v. *Wells,* 224 Mass. 504, 514.

Upon all the evidence the findings that neither the Holland-System, Inc., nor the individual defendants ever turned over to the Hull Company the amount of the subscription for the capital stock or any equivalent therefor, was not erroneous, but was warranted and must stand. There is nothing to show that there was any ratification by the Hull Company of the acts of the individual defendants or of the Holland-System, Inc., in wrongfully appropriating the funds of the Hull Company, if such acts were capable of ratification. See *Commercial Brewing Co.* v. *McCormick,* 225 Mass. 504. The bill can be maintained by the plaintiff as a minority stockholder for the benefit of the Hull Company.

The allowance made to the plaintiff for counsel fees out of the fund, found due to the Hull Company from the other defendants, was within the discretion of the court. *Davis* v. *Bay State League,* 158 Mass. 434. *Carlson* v. *Revere Beach County Fair & Musical Railway,* 227 Mass. 291.

*Decree affirmed.*